# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| NATALIE MIMS, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-4288 |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| Defendants. | : | |
| | : | |

## Memorandum

YOHN, J.                                                                                                    May 19, 2010

Plaintiff, Natalie Mims, a former correctional officer in the Philadelphia prison system, brings this action pursuant to 42 U.S.C. § 1983 against the City of Philadelphia ("the City") and four other City correctional officers: Capt. Giannetta, Sgt. Ferguson, Sgt. Alderman, and Sgt. Galloway.[1] Plaintiff alleges that the individual defendants, through a pattern of discrimination, harassment, and retaliation against her, forced plaintiff to resign from her position as correctional officer. Plaintiff also alleges that the City permitted, encouraged, or ratified the individual defendants' behavior. As a result, plaintiff argues that the defendants deprived her of her rights to equal protection and due process under the Fourteenth Amendment to the U.S. Constitution and that they unlawfully retaliated against her for exercising those rights. Plaintiff seeks monetary damages, injunctive relief, and mandamus requiring the City to revoke a disciplinary suspension.

Before me is defendants' motion to dismiss plaintiff's amended complaint for failure to state a claim upon which relief may be granted. I conclude that plaintiff has failed to state a claim

---

[1] Plaintiff's amended complaint names the individual defendants by what appear to be their last names only. Plaintiff avers that the individual defendants' last names are unknown but apparently intended to state that these defendants' first names are unknown.

for violation of her rights to equal protection and substantive due process, has failed to state procedural due process claims against the individual defendants, and has failed to state retaliation claims against defendants Alderman, Ferguson, and Galloway. As a result, I will grant defendants' motion in part and dismiss those claims. I will, however, deny as premature defendants' motion to dismiss plaintiff's request for mandamus against the City.

## I. Factual and Procedural History[2]

Plaintiff was employed by the City as a full-time correctional officer from September 1997 through March 1, 2009. During her employment, plaintiff allegedly experienced overcrowded and unsafe working conditions. Plaintiff also alleges that she experienced "ongoing discrimination, harassment, and retaliation by Defendants." (Am. Compl. ¶ 22.) While assigned to the City's Riverside Correctional Facility, plaintiff filed an informal complaint about her working conditions in the prison system. She thereafter received an allegedly retaliatory fifteen-day suspension, which she served from June 3 to 18, 2007. Plaintiff's amended complaint does not disclose the stated grounds for this suspension.

On July 10, 2007, plaintiff learned from her supervisor, who is not a defendant in this action, that the supervisor was being "pressured by Defendants to 'burn [Plaintiff] for anything she could.'" (*Id.* ¶ 25 (alteration in original).) On July 16, 2007, defendant Giannetta informed plaintiff that defendant Alderman and another correctional officer had reported observing plaintiff "'laughing and talking to [herself].'" (*Id.* ¶ 26.) Giannetta told plaintiff that she would be relieved of her duties and escorted to the City doctor's office for psychological evaluation. As a result, plaintiff was out of work for seven days without pay.

---

[2] For the purposes of this memorandum, I accept as true all factual allegations contained in plaintiff's amended complaint.

On July 24, 2007, plaintiff filed an appeal with the Civil Service Commission ("CSC") protesting the fifteen-day suspension that she had served in June.[3]

On August 3, 2007, plaintiff was "attacked and humiliated" by another correctional officer who is not a party to this action. (*Id.* ¶ 29.) Plaintiff reported the attack and was transferred from the Riverside Correctional Facility to the Detention Center.

Sometime in August, the CSC informed plaintiff that her appeal of the fifteen-day suspension was untimely. Plaintiff "re-submitted" her appeal on August 29, 2007. (*Id.* ¶ 30.)

On October 5, 2007, plaintiff learned that Major Lawton, who is not a party to this suit, and Giannetta were being assigned to the Detention Center. Fearing further "discrimination, harassment, and retaliation" from those officers, plaintiff experienced a "severe anxiety attack" and was escorted to the city doctor's office for psychological evaluation. (*Id.* ¶ 31.) As a result of the anxiety attack, plaintiff was transferred on October 24, 2007, to the "Alternative and Special Detention." (*Id.* ¶ 32.)

On November 19, 2007, plaintiff learned that the CSC had granted her a hearing on her appeal of the fifteen-day suspension. On November 23, 2007, however, plaintiff learned that she would be receiving an additional five-day suspension for the same charges that had led to the fifteen-day suspension, which she had already served. That day, plaintiff requested medical leave for stress, depression, and severe anxiety that she experienced as a result of defendants' conduct. An employee of the City's personnel department informed plaintiff that she did not qualify for leave under the Family and Medical Leave Act ("the FMLA") because she had served the fifteen-

---

[3] Until around July 24, 2007, plaintiff believed that her Union had already filed an appeal on her behalf.

day suspension. She was instead placed on a medical leave of absence without pay or health benefits.[4]

On December 7, 2007, plaintiff's psychiatrist, Dr. Kalkstein, concluded that plaintiff was "unable to perform her job duties because of the stress, depression, and severe anxiety that she was suffering" as a result of defendants' conduct. (Am. Compl. ¶ 37.) As a result, Dr. Kalkstein "removed [plaintiff] from work." (*Id.*)

On March 11, 2008, plaintiff represented herself at the appeal hearing for the fifteen-day suspension. The CSC ruled in her favor and overturned the suspension, finding the suspension unjustified. Plaintiff returned to work on June 1, 2008.

On August 1, 2008, Giannetta issued a written warning to plaintiff which "fabricated an employee counseling" and "threatened progressive disciplinary sanctions." (*Id.* ¶ 41.) At some point that month, Alderman threatened plaintiff with "bodily harm," and plaintiff reported the threat to defendant Ferguson, her immediate supervisor. (*Id.* ¶ 42.)

On January 15, 2009, plaintiff agreed to testify at the disciplinary hearing of Sgt. Joy, who is not a party to this action. The following month, the City of Philadelphia Administration and, two days later, defendant Galloway, informed plaintiff that she would be required to serve the five-day suspension, beginning on March 2, 2009.

On March 1, 2009, Dr. Kalkstein again "removed" her from work and placed her on a medical leave of absence after deeming her unable to work because of "stress, depression, and severe anxiety" arising from defendants' conduct. Plaintiff was "forced to resign" from her

---

[4] Leave pursuant to the FMLA need not be paid, but the employer must continue to provide health and other benefits. *See* 29 U.S.C. §§ 2612(c), 2614(c).

position on June 16, 2009, "due to unsafe working conditions, as well as the ongoing discrimination, harassment, and retaliation that she was subjected to by defendants." (*Id.* ¶ 46.)

On August 25, 2009, plaintiff filed a complaint against the City in the Philadelphia Court of Common Pleas, seeking damages and mandamus relief. Although the complaint did not identify the legal source of plaintiff's entitlement to relief, the City construed it as stating causes of action arising under the FMLA and the First and Fourteenth Amendments of the U.S. Constitution, and removed the action to this court.

The City filed its first motion to dismiss the complaint on September 28, 2009. On October 16, 2009, however, plaintiff filed an amended complaint in response to the motion to dismiss, adding the individual defendants as parties and clarifying that she was seeking relief under 42 U.S.C. § 1983 for violation of her Fourteenth Amendment rights to equal protection and due process. The amended complaint sets forth three counts: one for mandamus against the City, one seeking to hold the City liable under § 1983, and one seeking to hold the individual defendants liable under § 1983. The amended complaint does not assert any entitlement to relief under the FMLA or a state law claim for wrongful discharge. The factual allegations in the amended complaint are substantially identical to those in the original complaint.

Because plaintiff had amended her complaint, I dismissed the City's first motion to dismiss as moot. The City and individual defendants then filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff submitted a response, followed by defendants' reply.

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the "sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The complaint

must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* (citations and alterations omitted). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Id.* (citations and footnote omitted). Nevertheless, "a complaint 'need not plead law or match facts to every element of a legal theory.'" *Lewis v. Ford Motor Co.*, 610 F. Supp. 2d 476, 490 (W.D. Pa. 2009) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 429 (3d Cir. 2001)).

When evaluating a motion to dismiss, the court conducts a "two-part analysis." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)) . "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that

the pleader is entitled to relief.'" *Id.* (internal alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## III. Discussion

Plaintiff alleges that defendants' conduct violated her Fourteenth Amendment rights to

equal protection and due process. She also alleges that defendants retaliated against her for

engaging in statutorily or constitutionally protected activities, such as appealing her fifteen-day

suspension and requesting FMLA leave. Defendants argue that plaintiff's specific factual

allegations fall short of showing a plausible claim for relief under § 1983. Specifically,

defendants argue that: (1) plaintiff has failed to show that she was deprived of any recognized

federal right, and (2) plaintiff has failed to allege behavior of the type that would subject

defendants to § 1983 liability. Defendants further argue that plaintiff is not entitled to mandamus

relief because she has an adequate remedy at law and that, to the extent that the amended

complaint asserts a wrongful discharge claim under Pennsylvania law, plaintiff is not entitled to

pursue such a claim.

"To establish a valid claim under § 1983, a claimant must show: (1) that the conduct

complained of was committed by a person acting under color of state law; and (2) that the

conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws

of the United States." *Robb v. City of Phila.*, 733 F.2d 286, 290-91 (3d Cir. 1984); *see also*

*Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). Defendants do not dispute

plaintiff's allegation that they acted under color of state law. As a result, the sufficiency of

plaintiff's amended complaint hinges on whether she has adequately shown that defendants

deprived her of some right or privilege arising under the Constitution or other federal law.

Plaintiff's amended complaint may be fairly read as alleging that defendants: (1) violated plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment; (2) violated plaintiff's rights under the Due Process Clause of the Fourteenth Amendment;[5] and (3) retaliated against her for exercising her rights under the First Amendment, Fourteenth Amendment, or the FMLA. Defendants also construe plaintiff's amended complaint as seeking relief under Pennsylvania law for wrongful termination.

### A. Constitutional Claims

#### 1. Equal Protection

Plaintiff alleges that defendants deprived her of equal protection of the laws by discriminating against her. However, plaintiff's allegations of discrimination are too conclusory to place the defendant on fair notice of the nature of her equal protection claim and the "'grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 47). Plaintiff does not describe other similarly situated individuals who received more favorable treatment. Such allegations are essential to an adequate showing of entitlement to relief. *See Iqbal*, 129 S. Ct. at 1951 (holding that plaintiff's assertion that he was subjected to harsh confinement "solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest"

---

[5] Defendants argue that, under *Iqbal*, *Fowler*, and *Kaucher v. County of Bucks*, 455 F.3d 418, 423-24 (3d Cir. 2006), plaintiff's amended complaint was required to identify the protected interest at stake and to specify the kind of process to which she was entitled. None of those cases, however, requires plaintiff to articulate specific legal theories in her complaint. Indeed, in *Fowler* the Third Circuit held that, in determining the sufficiency of a plaintiff's complaint, the district court may "disregard any legal conclusions" contained therein. 578 F.3d at 210-11; *see also Hull v. Fleetwood Enters.*, No. 06-1669, 2007 U.S. Dist. LEXIS 20984, at *4 (W.D. Pa. Mar. 23, 2007) ("[T]he court will not dismiss a claim merely because plaintiff's factual allegations do not support the particular legal theory he advances. Rather, the court is under a duty to examine independently the complaint to determine if the factual allegations set forth could provide relief under any viable legal theory." (citing 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 n.49 (3d ed. 2007))); 2 James Wm. Moore et al., *Moore's Federal Practice* § 8.04[3] (3d ed. 2009).

amounted to "no more than a 'formulaic recitation of the elements' of a constitutional discrimination claim'" (quoting *Twombly*, 550 U.S. at 555)); *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (holding that, in order to prevail on an equal protection claim under §1983, plaintiff must demonstrate that she "'receiv[ed] different treatment from that received by other individuals similarly situated'" (quoting *Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980)) (alteration in original)). Moreover, plaintiff makes no allegation that she is a member of a protected class or that the alleged wrongdoing was motivated by that unstated characteristic, as is necessary in order to state an equal protection claim in the context of government employment. *See Engquist v. Or. Dep't of Agric.*, 128 S. Ct. 2146, 2154-56 (2008) (holding that, because "employment decisions are quite often subjective and individualized," a state employee was not entitled to relief under § 1983 simply because she was subjected to arbitrary or irrational treatment but must instead show that she suffered discrimination on the basis of her membership in some identifiable group).

As a result, plaintiff's allegations of discrimination have failed to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. I will therefore dismiss plaintiff's equal protection claim.

### 2. Procedural Due Process

In addition to its guarantee of equal protection, the Fourteenth Amendment prohibits state deprivations of life, liberty, or property without due process of law. "Application of this prohibition requires a familiar two-stage analysis: we first must ask whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property'; if protected interests are implicated, we then must decide what procedures

constitute 'due process of law.'" *Robb*, 733 F.2d at 292 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569-72 (1972)).

### a. Protected Interest

Plaintiff alleges that defendants deprived her of her "liberty interest . . . in avoiding unjust and retaliatory disciplinary action" when they forced her to serve a suspension that the CSC had previously overturned as unjustified. (Pl.'s Resp. 12.) Plaintiff also alleges that defendants harassed her by placing defendant Giannetta in a position to inflict "discrimination, harassment, and retaliation" on her; and, in the case of defendant Alderman, by threatening her with bodily harm. (*Id.* at 11.) Plaintiff further alleges that this harassment led to her inability to continue working as a correctional officer. (*Id.* at 5.) As discussed in further detail below, plaintiff's interest in avoiding unjust disciplinary action and harassment is best characterized as a property, rather than a liberty, interest. Nevertheless, plaintiff's amended complaint contains sufficient allegations to place defendants on notice that such an interest existed.

Plaintiff has not provided any supporting authority for her argument that she had a liberty interest in avoiding unjust disciplinary action. Courts have recognized that an adverse public employment decision may implicate liberty interests when the employer publicizes the reasons underlying the decision, thus impairing the employee's "interest in his 'good name, reputation, honor or integrity,'" *see Bishop v. Wood*, 426 U.S. 341, 348 (1976) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)); *see also Robb*, 733 F.2d at 294. Plaintiff has not, however, alleged that defendants made any public statements about her that would undermine her

reputation or good name, nor have I been able to identify any other recognized liberty interest that could have been undermined by defendants' conduct.[6]

Plaintiff did, however, have a property interest in continued employment and avoiding disciplinary suspensions. As defendants have conceded, plaintiff's position was subject to Philadelphia civil service regulations that prohibit dismissal and suspension of Philadelphia civil servants except for "just cause." (Defs.' Mot. 24.) *See* Phila. Civil Serv. Reg. §§ 17.01, 17.04. The law is well settled that employees who cannot be terminated except for cause have a property interest in continued employment that may form the basis of a procedural due process claim. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39, 542-43 (1985); *Robb*, F.2d at 292 (holding that a Philadelphia civil servant had a property interest in continued employment for purposes of his procedural due process claim). Moreover, a civil servant's procedural due process interest in continued employment is implicated not only by official decisions to dismiss the employee but also by conduct constituting constructive discharge. *See Rusnak v. Williams*, 44 F. App'x 555, 558 (3d Cir. 2002) (citing *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227-28 (3d

---

[6] Plaintiff's allegations of retaliation may be read as alleging deprivation of her rights under the First Amendment. *Cf. Robb*, 733 F.2d at 295 (holding that a state employer "may not deny a benefit to a person on a basis that infringes his constitutionally protected interest in freedom of speech, regardless of whether the person has a 'right' to that benefit"). First Amendment retaliation claims, however, are analyzed under a different framework from procedural due process claims. *See, e.g.*, *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990) (distinguishing First Amendment retaliation claim from procedural due process claim); *Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) (applying different standards to constructively discharged state employee's claims of First Amendment retaliation and denial of procedural and substantive due process). As a result, I will discuss plaintiff's retaliation claim separately from her due process claim.

Cir. 1998)). Plaintiff also had a property interest in avoiding unjust disciplinary suspensions. *Dee v. Borough of Dunmore*, 549 F.3d 225, 230 n.6 (3d Cir. 2008).[7]

Plaintiff cannot, however, base her entitlement to relief under § 1983 on her allegation that she was unfairly denied FMLA leave. The FMLA creates an entitlement, and consequently a property interest, in a certain amount of unpaid medical leave per year. *See* 29 U.S.C. § 2612(c) (creating entitlement to twelve workweeks of family and medical leave per year); *Roth*, 408 U.S. 576-77 (noting that statutory entitlements can rise to level of property interest). Nevertheless, this interest cannot form the basis of a § 1983 claim because the FMLA includes comprehensive enforcement provisions that evince Congress' intent to foreclose enforcement through § 1983. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."); *Kilvitis v. County of Luzerne*, 52 F. Supp. 2d 403, 417-19 (M.D. Pa. 1999) (holding that *Sea Clammers* precludes a § 1983 action to enforce FMLA rights). As a result, denial of FMLA leave cannot constitute a deprivation of a property interest for the purposes of plaintiff's due process claim.

### b. Individual Defendants

Although plaintiff had protected interests in continued employment and avoiding unjust suspension, she has failed to make sufficient factual allegations to give rise to a plausible inference that any individual defendant's conduct amounted to an unconstitutional deprivation of

---

[7] Plaintiff may also have had a property interest in avoiding unjust suspensions and dismissals based on her union's collective bargaining agreement, which, as defendants note, requires suspensions and dismissals to be for just cause only. (Defs.' Mot. 24.) *See Dee*, 549 F.3d at 230-31.

those interests. She has not identified any individual defendant as being responsible for the decision to impose the five-day suspension. Moreover, she has not alleged any conduct attributable to any individual defendant that could state a plausible claim for constructive discharge, nor has she alleged facts suggesting that the individual defendants encouraged or ratified each other's conduct such that each one should be held responsible for the whole sum of their collective activities. As a result, plaintiff's procedural due process claims against the individual defendants will be dismissed.

Plaintiff alleges that Ferguson was her immediate supervisor and that plaintiff notified Ferguson that Alderman had threatened plaintiff with bodily harm. She does not allege that Ferguson was involved in any improper conduct. Even assuming that plaintiff has adequately described conduct by other employees that forced her to resign, that conduct would not automatically support a § 1983 claim against her supervisor. *See Iqbal*, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff alleges that Alderman threatened her with bodily harm on one occasion and that, prior to the limitations cutoff,[8] Alderman reported seeing plaintiff laughing and talking to herself. Plaintiff does not allege that Ferguson took inadequate action in response to Alderman's threat, such that Alderman presented an ongoing risk to plaintiff's safety. Moreover, malicious acts by

---

[8] Defendants argue that any claims premised on events that occurred before August 26, 2007, two years before plaintiff filed her initial complaint, must be dismissed as time-barred. The limitations period for § 1983 actions is provided by the "general or residual statute for personal injury actions" of the state in which the claim arose, which is two years in Pennsylvania. *See Owens v. Okure*, 488 U.S. 235, 250 (1989); 42 Pa. Cons. Stat. Ann. § 5524 (West 2009). Plaintiff has not responded to this argument. As a result, plaintiff's claims must be based on events occurring after August 26, 2007. Previous events may provide context for those claims.

state employees, unauthorized by the state, do not give rise to a procedural due process claim unless the state fails to provide any post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984). As a result, plaintiff has not alleged conduct by Alderman that would give rise to a claim for deprivation of her interest in continued employment.

Plaintiff alleges that Giannetta subjected plaintiff to unspecified discrimination, retaliation, and harassment;[9] that Giannetta was transferred to the Detention Center where plaintiff worked, causing plaintiff to experience an anxiety attack; and that Giannetta issued a written warning to plaintiff, threatening progressive discipline. The first of these allegations is too conclusory to give rise to a plausible claim for relief. *See, e.g., Carpenter v. Ashby*, No. 08-4021, 2009 U.S. App. LEXIS 20265, at *7-8 (3d Cir. Sept. 10, 2009) (mere allegation of discriminatory animus was insufficient to state a claim); *Mann v. Brenner*, No. 09-2461 2010 U.S. App. LEXIS 6540, at *7-8 (3d Cir. Mar. 30, 2010) (mere allegation of retaliation was insufficient to state a claim). Plaintiff's remaining allegations are likewise insufficient. Plaintiff has not alleged that Giannetta was in any way responsible for the decision to transfer her to plaintiff's workplace. The written warning, alone, could not reasonably give rise to a claim for constructive discharge under § 1983.

Plaintiff alleges that Galloway informed plaintiff that plaintiff would be required to serve an allegedly unjust five-day suspension. Plaintiff does not state that Galloway was responsible for the decision to require her to serve the suspension, nor can I reasonably infer such responsibility as Galloway conveyed this message to plaintiff two days after the City had already

---

[9] Such claims are the types of "labels and conclusions" that *Twombly* found inadequate to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555, 465 n.10 (holding that allegation that defendants "entered into a contract, combination or conspiracy to prevent competitive entry into their . . . markets and have agreed not to compete with one another" was overly conclusory to state a claim of conspiracy in restraint of trade).

conveyed the same information to her. Moreover, merely informing plaintiff of a disciplinary action cannot reasonably give rise to a claim for constructive discharge under § 1983.

As a result, I will dismiss plaintiff's procedural due process claims against the individual defendants.

### c. City of Philadelphia

Although plaintiff has not alleged sufficient facts to state a claim against the City for constructive discharge under § 1983, she has alleged sufficient facts to state a claim for wrongful suspension. As a result, I will deny defendants' motion to dismiss plaintiff's procedural due process claims against the City.

In order to state a claim against a municipality under § 1983, a plaintiff may not rely on a *respondeat superior* theory of liability but must instead "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).[10] "[I]t is incumbent upon a plaintiff to show that a [municipal] policymaker is responsible either for the policy, or, through acquiescence, for the custom." *Andrews*, 895 F.2d at 1480. "To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). A complaint that merely alleges that state officers engaged in an ongoing course of conduct is insufficient; it

---

[10] "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (alteration in original) (quoting *Pembaur v. City of Cincinnatti*, 475 U.S. 469, 481 (1986)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Id.* (alteration in original) (quoting *Monell*, 436 U.S. at 690).

must further plead "knowledge of such [conduct] by a municipal decisionmaker" or make allegations that indirectly support such an inference. *Id.* at 658-59.

Plaintiff has pled insufficient facts from which it could be inferred that the City might be liable under § 1983 for the conduct of the individual defendants, as plaintiff has made only conclusory allegations that the City encouraged or was aware of the individual defendants' allegedly wrongful conduct. Plaintiff's assertion in Count II of her amended complaint that the City "permitted, encouraged, tolerated, ratified, and was deliberately indifferent to a pattern, practice, and custom of discrimination, harassment, and retaliation" is exactly the type of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," of which the Supreme Court disapproved in *Iqbal*. 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

Plaintiff's suspensions, the transfer of Giannetta and Lawton to the Detention Center, the denial of FMLA leave, and the email notifying plaintiff that she would be required to serve the five-day suspension are the kinds of actions that plausibly may have been initiated or approved by a "decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action." *Pembaur v. City of Cincinnatti*, 475 U.S. 469, 481 (1986). Although she does not explicitly state that such a decisionmaker is responsible for those acts, Rule 8 does not require explicit, formulaic pleading of each element of a cause of action where the presence of some elements is reasonably suggested by specifically pleaded facts. *See Iqbal*, 129 S. Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Of plaintiff's specific allegations regarding the City, only the five-day suspension could reasonably have amounted to a deprivation of some protected interest. As noted above, the denial of FMLA leave cannot form the basis for plaintiff's procedural due process claim. The fifteen-day suspension was imposed prior to the statute of limitations cutoff and was, in any case, administratively overturned. Finally, the only manner in which the City's transfer of Giannetta and Lawton to the Detention Center could have deprived plaintiff of any protected interest is if, in doing so, the City acted with the degree of responsibility that could render it liable under *Monell* for plaintiff's constructive discharge. To show such responsibility, plaintiff would, at the very least, have to show that the City acted with deliberate indifference to the likelihood that Giannetta and Lawton would engage in unlawful behavior. *Cf. Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (holding that municipality could be held responsible for officer's pattern of use of excessive force only if it acquiesced or was deliberately indifferent to the officer's conduct). She has not made any specific allegations from which it could be inferred that the City was aware, or even on notice, of Giannetta's and Lawton's conduct toward plaintiff at the time that it made its decision to transfer them to the Detention Center.

Defendants argue that plaintiff's amended complaint fails to allege that her five-day suspension was characterized by inadequate process. As defendants correctly note, "in procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Id.* at 126. Defendants argue that because nothing in plaintiff's amended complaint suggests that she could

not have successfully appealed her five-day suspension in the same manner as she appealed her fifteen-day suspension, she has not stated a plausible procedural due process claim arising out of her suspension.

Defendants' argument overlooks the effect of plaintiff's allegations of retaliation. According to plaintiff, the City imposed a five-day suspension for the same charges that formed the basis of her fifteen-day suspension, only four days after the CSC granted plaintiff a hearing on her appeal of the fifteen-day suspension. Drawing all plausible inferences in plaintiff's favor, the fact that the second suspension was imposed in response to her appeal of the first one may reasonably have deterred plaintiff from appealing the second one as well. *Cf. Hartley*, 2006 U.S. Dist. LEXIS 95838, at *60 (plaintiff had viable due process claim, despite nominal availability of grievance procedures, when she reasonably feared that a grievance would lead to retaliation).

I therefore conclude that plaintiff has sufficiently pleaded her claim that the City deprived her of due process of law by imposing the five-day suspension and will deny defendants' motion to dismiss that aspect of plaintiff's amended complaint. To the extent that plaintiff seeks to hold the City liable for other deprivations of procedural due process, I will dismiss that aspect of the amended complaint.

### 3. Substantive Due Process

Defendants argue that plaintiff's amended complaint does not present a viable substantive due process claim. I agree. "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon*, 494 U.S. at 125 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

"To prevail on a substantive due process claim challenging a state actor's conduct, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'" *Hill*, 455 F.3d at 234 n.12 (quoting *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139-140 (3d Cir. 2000)). "[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Reich v. Beharry*, 883 F.2d 239, 244 (3d Cir. 1989). "Rather, to state a substantive due process claim, 'a plaintiff must have been deprived of a *particular quality* of property interest.'" *Nicholas*, 227 F.3d at 140 (quoting *DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 598 (3d Cir. 1995)). Whether a property interest is entitled to substantive due process protection is "not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." *Id.* (quoting *Regents of Univ. Of Michigan v. Ewing*, 474 U.S. 214, 229 (1985)). If the property interest is fundamental, then "substantive due process protects the plaintiff from arbitrary or irrational deprivation, regardless of the adequacy of the procedures used." *Id.* at 142. If not, however, "the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process." *Id.*

In *Nicholas v. Pennsylvania State University*, the Third Circuit held that a tenured state university professor's interest in continued employment by the university could not support a substantive due process claim. 227 F.3d at 136. The court explained that public employment is a "wholly state-created contract right" that "bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution." *Id.* at 143. It is neither "a property interest that is deeply rooted in the Nation's history and traditions" nor an interest "implicit in the concept of ordered liberty like personal choice in matters of marriage and

family." *Id.* (quoting *Homar v. Gilbert*, 63 F. Supp. 2d 559, 576 (M.D. Pa. 1999)). Because

plaintiff has no more fundamental an interest in continued employment than the plaintiff in

*Nicholas*, her allegations of unjust discipline and constructive discharge cannot form the basis of

a substantive due process claim.

The amended complaint also states that plaintiff was forced to resign in part due to

"unsafe working conditions" as well as "ongoing discrimination, harassment, and retaliation" by

the defendants and that defendant Alderman once threatened her with "bodily harm." (Am.

Compl. ¶¶ 42, 46.) Plaintiff cannot, however, base her substantive due process claim on allegedly

unsafe working conditions. *See Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992)

("Neither the text nor the history of the Due Process Clause supports petitioner's claim that the

governmental employer's duty to provide its employees with a safe working environment is a

substantive component of the Due Process Clause."). Although workplace dangers may

constitute deprivations of substantive due process where they result from "conscience-shocking

conduct," including deliberate indifference to safety, plaintiff has not alleged any conduct that

shocks the conscience. *See Kaucher v. County of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006)

(holding that deliberate indifference to workplace safety may be sufficient to shock the

conscience); *id.* at 430 (discussing *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204 (3d Cir.

2001), in which the plaintiff was ordered to repair high-voltage power line without proper

training or protective gear, exposing plaintiff to "almost certain injury"); *id.* at 431 (discussing

*Hawkins v. Holloway*, 316 F.3d 777 (8th Cir. 2003), in which defendant sheriff pointed loaded

weapons at subordinate employees, thereby "oppressing those employed in his department").

Plaintiff's mere allegation that defendant Alderman threatened her with "bodily harm" is

insufficient to give rise to a plausible inference that this threat rose to the level of oppressive and

egregious conduct such as that seen in *Hawkins*. Moreover, plaintiff has not even conclusorily alleged that any defendant was deliberately indifferent to unsafe working conditions at the prison.

As a result, to the extent that plaintiff's claims rest on some violation of her substantive due process rights, I will dismiss those claims.

### 4. Retaliation

Plaintiff also alleges that defendants violated her constitutional rights by retaliating against her. "In general, constitutional retaliation claims are analyzed under a three-part test. Plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 282 (3d Cir. 2004). "Those acting under color of state law may not deny a benefit to a person on a basis that infringes his constitutionally protected interest in freedom of speech, regardless of whether the person has a 'right' to that benefit." *Robb*, 733 F.3d at 295.

### a. Protected Activity

Plaintiff alleges that she engaged in the following protected activities: (1) requesting medical leave on November 23, 2007, for stress, depression, and severe anxiety; (2) appealing her fifteen-day suspension on July 24, 2007, re-submitting the appeal on August 29, 2007, and appearing at a hearing on that appeal on March 11, 2008;[11] (3) notifying defendant Ferguson in August 2008 that she had just been threatened by defendant Alderman; and (4) agreeing on January 15, 2009, to testify at Sgt. Joy's disciplinary hearing. She alleges that defendants

---

[11] Because plaintiff's retaliation claims did not accrue until the alleged retaliatory actions occurred, *see Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 569-70 (E.D. Pa. 2004), plaintiff may base her retaliation claims on protected activities prior to the limitations cutoff— August 26, 2007—on the basis of which defendants retaliated against her after the cutoff.

retaliated against her by imposing and enforcing an additional five-day suspension, by denying medical leave, and by writing a warning threatening disciplinary sanctions.

Plaintiff's appeal of her fifteen-day suspension and agreement to testify at Sgt. Joy's disciplinary hearing were protected under the Due Process Clause. Plaintiff and Sgt. Joy, as discussed *supra*, possessed property interests in avoiding unjust discipline and could not be deprived of those interests without due process of law. By appealing her suspension, plaintiff was attempting to exercise those due process rights. "[O]fficial retaliation for the exercise of any constitutional right creates an actionable claim under Section 1983." *Anderson v. Davila*, 125 F.3d 148, 162 (3d Cir. 1997). Although it is unclear whether plaintiff's assistance of Sgt. Joy in exercising his due process rights is similarly protected, I decline to decide that issue at this stage as defendants failed to raise it in their motion or reply brief.

Although plaintiff's request of FMLA leave was protected by the FMLA, § 1983 is not the appropriate vehicle for her retaliation claim because the FMLA provides its own remedies, including a private right of action for retaliation. *See* 29 U.S.C. §§ 2615, 2617(a); *Kilvitis*, 52 F. Supp. 2d at 419. Nor is that request protected by the First Amendment for the purposes of a public employee's retaliation claim, as it cannot be "'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)) (holding that a public employee engages in activity protected by the First Amendment only if the speech addresses a matter of public concern). Plaintiff's report that Alderman had threatened her is also not a protected activity. Like a request for FMLA leave, a workplace altercation between two

employees cannot be "'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Id.*[12]

### b. Retaliatory Response

Plaintiff alleges that she was subjected to retaliation when she received the five-day suspension on November 23, 2007; when she was told on February 27, 2009, and March 1, 2009, that she would be required to serve the five-day suspension; when she was informed on November 26, 2007, that she was not eligible for FMLA leave because she had served the fifteen-day suspension;[13] and when she received a warning from Giannetta on August 1, 2008, that threatened progressive disciplinary sanctions. The suspension and denial of FMLA leave may be fairly traced to the City, whereas the written warning is attributable to Giannetta.

Defendants have not argued that plaintiff failed to establish a sufficient nexus between plaintiff's protected activities and the allegedly retaliatory conduct. Instead, citing *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008), defendants argue that none of these allegedly retaliatory acts shock the conscience. That case addressed a substantive due process claim, not a retaliation claim. In the context of a retaliation claim, a plaintiff may prevail based on "'even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights.'" *Rutan v. Republican Party of Ill.*, 497 U.S. 62,

---

[12] If defendant Alderman's threat of bodily harm to plaintiff had amounted to an actual or threatened substantive due process violation, then plaintiff's report of the threat to a supervisor could be characterized as an attempt to vindicate her substantive due process rights. As noted above, however, plaintiff has not alleged sufficient facts to show that the threat in fact implicated any substantive due process right.

[13] Although § 1983 is not the appropriate vehicle for alleging retaliation in response to a request for FMLA leave, the FMLA does not specifically prohibit retaliatory denials of FMLA leave based on conduct not protected by the FMLA.

75 n.8 (1990) (quoting *Rutan v. Republican Party of Ill.*, 868 F.2d 943, 954 n.4 (7th Cir. 1989)).[14]

As a result, plaintiff has set forth sufficient facts to state a § 1983 retaliation claim against Giannetta and the City. As plaintiff has not specifically alleged that the other individual defendants were involved in the allegedly retaliatory acts, I will dismiss any retaliation claims plaintiff may be asserting against them.

### B. Wrongful Discharge Claims

Defendants construe plaintiff's amended complaint as asserting a state common-law claim for wrongful and constructive discharge. As discussed in further detail above, I construe plaintiff's allegations of constructive discharge as pertaining to her procedural due process claim, not to any claim under state law. Moreover, in her amended complaint and her response to defendants' motion to dismiss, plaintiff characterized her claims as arising exclusively under § 1983. As a result, I do not read plaintiff's amended complaint as stating a claim arising under state employment law.[15]

---

[14] Defendants also argue that the individual defendants, including Giannetta, are entitled to qualified immunity, which shields government officials from liability for conduct that "does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant may raise the issue of qualified immunity on a motion to dismiss where the defense is "based on facts appearing on the face of the complaint." *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Defendants' qualified immunity argument, however, merely restates their argument that plaintiff failed to state a claim for deprivation of procedural due process or equal protection. (*See* Defs.' Mot. 22.) Defendants do not seriously argue that the right to be free from retaliation in response to protected activity is not "clearly established."

[15] Plaintiff's original complaint did appear to contain state law claims for wrongful or constructive discharge.

### C. Mandamus Request

Count I of plaintiff's amended complaint requests mandamus against the City compelling it to revoke her suspension.[16] Defendants characterize this count as a separate claim arising under state law and request that this claim be dismissed. I conclude that mandamus is a form of relief, not a separate claim, and that any conclusion as to the availability of mandamus in this action would be premature at this stage.

Under Pennsylvania law, "[m]andamus is an extraordinary writ which will issue 'to compel performance of a ministerial act or mandatory duty where there exists a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other adequate and appropriate remedy.'" *Shaler Area Sch. Dist. v. Salakas*, 432 A.2d 165, 168 (Pa. 1981) (quoting *Phila. Newspapers, Inc. v. Jerome*, 387 A.2d 425, 430 n.11 (Pa. 1978)). The legal right and the corresponding duty are supplied not by any law specifically relating to mandamus relief but rather by some other source of law. *See id.* at 168 (noting that plaintiff's asserted legal right to a disciplinary hearing, for the purposes of his mandamus request, arose from state laws governing employment of public school teachers). As a result, mandamus in Pennsylvania is best characterized as a form of relief, not a "claim" in its own right. *See Black's Law Dictionary* 281 (9th ed. 2009) (*claim*, 1.: "The aggregate of operative facts giving rise to a right enforceable by a court"). Federal law governing mandamus is similar. *See In re Complaint of Bankers Trust Co.*, 775 F.2d 545, 547 (3d Cir. 1985) (describing mandamus as a form of relief awarded when the

---

[16] Count I does not specify the form that mandamus should take but rather refers generally to plaintiff's *ad damnum* clause, which requests various forms of legal and equitable relief in addition to revocation of her suspension. In her response to defendants' motion to dismiss, however, plaintiff clarifies that she is seeking mandamus specifically in order to revoke her suspension.

plaintiff shows that there is "no other adequate means to attain the relief desired" and that his or her "right to issuance of the writ is clear and indisputable").

Plaintiff's remaining claims at this juncture include due process and retaliation claims against the City arising out of her five-day disciplinary suspension. Success on those claims would necessarily imply that the five-day suspension was unlawful. I decline to decide, at this early stage of litigation, whether mandamus would be the only "adequate" avenue of relief if plaintiff prevails on either her due process or retaliation claim or whether monetary relief would be sufficient. As a result, I will deny defendants' motion to dismiss plaintiff's mandamus request.

## IV. Conclusion

Plaintiff has failed to make sufficient allegations to state an equal protection or substantive due process claim. Moreover, plaintiff has failed to make sufficient factual allegations to state a procedural due process claim against the individual defendants or a retaliation claim against defendants Galloway, Alderman, and Ferguson. As a result, I will dismiss plaintiff's amended complaint to the extent that it attempts to assert such claims. Plaintiff's remaining claims are: (1) her procedural due process claim against the City arising out of her five-day suspension; (2) her retaliation claims against the City arising out of her five-day suspension and retaliatory denial of medical leave; and (3) her retaliation claim against Giannetta arising out of the written warning plaintiff received on August 1, 2008. Mandamus remains a possible remedy.

Plaintiff has already amended her complaint once in response to the City's first motion to dismiss, which raised the same issues that form the basis of the present motion to dismiss. The amended complaint is in large part identical to the original complaint. As there is no reason to believe that allowing a second amended complaint would result in any material differences in the

allegations, I will dismiss the above-mentioned claims with prejudice. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."). Plaintiff has not suggested in her pleadings or briefs that a third "bite at the apple" would be anything other than futile.